THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CIVCON SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 20 C 1821 |
| ) | |
| ACCESSO SERVICES, LLC. ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff CivCon Services, Inc. is a former tenant of a building managed by Defendant Accesso Services, LLC. Civcon has brought a class action suit against Accesso for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of a class of tenants of Accesso's office buildings in the Chicago Loop. Civcon alleges that Accesso has conspired with the labor unions representing its employees to force tenants to hire union-only contractors. For the reasons discussed below, Accesso's motion to dismiss [Dkt. 23] is granted.

### BACKGROUND

The following factual allegations are taken from Civcon's Complaint (Dkt. 1) and are assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Accesso manages large commercial office buildings in the Chicago Loop. (Dkt. 1 ¶ 8). Since at least 2014, Accesso has allowed three labor unions, the International Union of Operating Engineers Local 399, AFLCIO, Service Employees International Union, Local 1, and Teamsters Local 705, to restrict access to its buildings by any non-union contractors. (*Id.* ¶ 9). CivCon alleges that Accesso and the three unions have an unwritten conspiracy that is a type of unfair labor

1

practice that is known as a "hot cargo agreement," i.e. a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized. (*Id.*). Accesso has agreed to impose this restriction on its Loop tenants as part of its agreement with the three unions and has generally complied with the power exerted over it by the union. (*Id.* ¶¶ 12, 13). Accesso requires that all contractors entering the building be approved by Accesso and be unionized in order to be approved. (*Id.* ¶ 16). Civcon acknowledges that the written Collective Bargaining Agreements between Accesso and the two of the Unions expressly prohibits this type of behavior. (*Id.* ¶ 10). Civcon alleges that Local 705, which represents movers, does not have a CBA with Accesso but successfully pressures Accesso to forbid non-union movers from accessing its buildings. (*Id.*).

Civcon was a tenant at 230 W. Monroe St, Chicago, a property managed by Accesso, for several years when it decided to move in April 2016. (*Id.*). Civcon and Accesso reached an agreement to allow Civcon to move to a smaller suite in the same property for a reduced rent. (*Id.*). CivCon hired the following services as part of its move: (1) a union firm to help it complete its move; (2) a union firm to install wiring in its new suite; and (3) a union firm to perform fiber optic/riser work to accommodate AT&T services in its new suite. (*Id.* ¶¶ 16–20). Civcon alleges it paid higher prices for the union work and would have preferred a different, cheaper option but was prohibited from doing so by Accesso due to its agreement with the Unions. (*Id.*). The difference in cost between union and non-union labor is significant, at least 20 percent higher for union workers and movers, if not more. (*Id.* ¶¶ 21-22). As a result of the agreement between Accesso and the Unions, CivCon and each putative Class member preferring to use non-union movers and other contract labor have been overcharged by an estimate of at least 20 percent. (*Id.* ¶ 21).

CivCon has brought two counts alleging violations of the Hobbs Act that serve as predicate offenses for RICO violations. Count I alleges violations under 18 U.S.C. §1962(c) for its alleged overpayment to service providers related to its move. (*Id.* ¶¶ 39–51). Count II alleges violations under 18 U.S.C. §1962(d) for its alleged conspiracy with the unions. (*Id.* ¶¶ 52–60).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Schumacher*, 844 F.3d 676 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

## DISCUSSION

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 makes it unlawful "to conduct" an "enterprise's affairs through a pattern of racketeering activity," where "racketeering" is defined as behavior that violates certain enumerated federal statutes or state laws addressing specific topics and bearing specific penalties. 18 U.S.C. §§ 1962(c); 1961(1). RICO

is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). When Congress enacted RICO, it chose to supplement criminal enforcement of its provision by providing that "[a]ny person injured in his business or property" by a RICO violation may seek treble damages and attorney's fees. 18 U.S.C. § 1964(c); *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 726 (7th Cir.1998). As this Court has discussed previously, "[w]hile Congress never intended RICO to be employed to allow plaintiffs to turn garden-variety state law fraud cases into RICO claims, the breadth of RICO's text and lure of treble damages and attorney's fees have proven irresistible to plaintiffs bent on federalizing such claims." *Guaranteed Rate, Inc. v. Barr*, 912 F.Supp. 2d 671, 681 (N.D. Ill. 2012) (Kendall, J.) (internal citations omitted); *see also Gamboa,* 457 F.3d at 710 ("Civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions. While it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, it is equally evident that RICO has not federalized every state common law cause of action available to remedy business deals gone sour.")

In order to state a RICO claim, a Plaintiff must allege a cognizable injury to its business or property resulting from the: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gamboa,* 457 F.3d at 705; *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Because Plaintiff fails to adequately plead these elements, Plaintiff's claim is dismissed without prejudice.

### I. Pattern of Racketeering Activity

Congress defined a "pattern of racketeering activity" to require "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Satisfying the pattern

element is difficult "and its precise requirements have bedeviled courts." *Menzies v. Seyfarth Shaw, LLP*, 943 F.3d 328, 336 (7th Cir. 2019). To plead a pattern of racketeering activity, "a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity," a standard known as the "continuity plus relationship" test. *Id.* (citing *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011)). The relationship prong of the test is satisfied by acts of criminal conduct close in time and character, undertaken for similar purposes, or involving the same or similar victims, participants, or means of commission. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The relatedness of the predicate acts is not often disputed, and, as here, the arguments often focus on the continuity prong. *See id.*; *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994).

In order to adequately plead the continuity dimension of the continuity-plus-relationship test, a plaintiff must plead sufficiently to meet one of the following prongs: "(1) demonstrating a closed-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Roger Whitmore's Auto Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 673 (7th Cir. 2005). In the closed-ended inquiry, the Court asks whether there were enough predicate acts over a finite time to support a conclusion that the criminal behavior would continue, and the focus is on "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Menzies*, 943 F.3d at 337; *Vicom*, 20 F.3d at 779–80.

In the alternative, the open-ended inquiry looks not on "what acts occurred in the past but on whether a concrete threat remains for the conduct to continue moving forward." *Menzies*, 943

F.3d at 337. This inquiry can be met "by showing that a defendant's actions pose a specific threat of repetition; that the predicate acts form part of the defendant's ongoing and regular way of doing business; or that the defendant operates a long-term association for criminal purposes." *Id.*; *see also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016). However, it is not enough to base an open-ended continuity theory on just one prior predicate act and an otherwise unsupported assertion that criminal activity will continue into the future. *Id.* at 337-38; *see also Gamboa*, 457 F.3d at 709 (explaining that when "a complaint explicitly presents a distinct and non-recurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity").

Accesso does not dispute that the relatedness element can be pled based on the allegations that CivCon used three union-only services in the April 2016. Accesso disputes whether the continuity test can be met here under either the open-ended or close-ended prong. Plaintiff has not pled sufficient facts to state a claim under either inquiry. First, under the close-ended inquiry, Plaintiff has not alleged a sufficiently lengthy time period, as their alleged acts only occurred under a one-month period. (Dkt. 1 ¶¶ 16–20). It is well-settled that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242. Plaintiff claims that they have pled that the RICO conspiracy lasted four years, but such allegations are conclusory and not properly pled. (Dkt. 1 ¶ 41 ("Accesso has committed a pattern of repeated violations of §§ 1951 for the past four years"); *Id.* at ¶ 54 ("This agreement has been ongoing between these entities for at least the last four years, and likely, longer.")). However, there is nothing in the Complaint to support this bald assertion. *See Iqbal*, 556 U.S. at 678 ("A pleading

6

that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted).

Likewise, Plaintiff has not sufficiently pled to meet the standards of the open-ended inquiry. Plaintiff has pled that they paid higher prices due to an alleged hot cargo agreement in April 2016. But there is nothing in the Complaint to suggest that Defendant's actions pose a specific threat of repetition, that the predicate acts form part of the Accesso's ongoing way of doing business, or that it is a long-term association for criminal purposes. *Menzies*, 943 F.3d at 337. Again, the only allegations to support a long-term agreement are Plaintiff's conclusory allegations that "[t]his relationship has been ongoing for many years," (Dkt. 1 ¶ 46) and the enterprise "has been ongoing for years." (*Id.* at ¶ 44).[1] Plaintiff argues that its allegations are sufficient because even if they haven't personally experienced an ongoing injury for years, unnamed class members have. As discussed, Plaintiff has not plausibly pled an ongoing injury. Its allegations pertaining to the length of the alleged RICO violation are conclusory and vague. Plaintiff's reliance on *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998) is misplaced. First, that case was at the summary judgment stage after discovery had been completed. Second, in that case, Corley alleged that "defendants made similar misrepresentations to other prospective Rosewood residents and their relatives about the availability of private suites, the availability of two entree choices at each meal, and the guarantee of continuing care with Medicaid reimbursement first at the Peoria facility and then at the Rosewood facility in East Peoria, Illinois," CivCon fails to make any such specific allegations as to other unnamed plaintiffs. *Corley*, 142

---

[1] The Court notes the similarities between the instant case and *Wacker Drive Executive Suites, LLC v. Jones Lang LaSalle Americas (Illinois), LP*, Case No. 18-CV-5492, 2019 WL 2270000, *1 (N.D. Ill. May 28, 2019), a non-precedential but recent decision in this District. The plaintiff there specifically pled two instances of the plaintiff paying higher prices for union workers in 2014 and 2017. There was therefore a longer period of time in between the well-pleaded allegations of the hot cargo agreement. The Court also notes that the defendant in *Wacker Drive* did not challenge the continuity prong.

7

F.3d at 1050. Therefore, Civcon has failed to state a RICO claim because it has not sufficiently pled to meet the continuity-plus test.

## II. Effect on Interstate Commerce

This Court would also grant Defendant's Motion to Dismiss because Plaintiff has failed to plead any effect on interstate commerce as required. To establish an effect on interstate commerce in a RICO claim, a "minor or minimal influence on interstate commerce is sufficient," and "the required nexus between the activities of the enterprise and interstate commerce need not be great." *United States v. Farmer*, 924 F.2d 647, 651 (7th Cir. 1991); *see also U.S. v. Espinoza*, 52 Fed. App'x 846, 849 (7th Cir. 2002) (RICO claim requires *de minimis* effect on interstate commerce). Here, Plaintiff has not pled any effect on interstate commerce, as required under the test. Plaintiff asks the Court to read between the lines and assume that since they plead that Accesso manages numerous large commercial buildings in Chicago's Loop, (Dkt. 1 ¶ 7), the tenants "undoubtedly participate in interstate commerce." (Dkt. 28 at 8). Plaintiff also claims that since they have pled that Accesso is in an alleged RICO conspiracy with the unions this naturally gives rise to the inference that interstate commerce was affected. In the case they cite as support, *Shales v. General Chauffeurs, Salesdrivers & Helpers Local Union No. 330*, 04 C 8358, 2005 WL 8179183, *3 (N.D. Ill. Aug. 17, 2005), the union was a named defendant in the case and plaintiff pled specifically that the union was a local labor organization under 29 U.S.C. § 402(i), which specifically is defined as a labor organization engaged in an industry affecting commerce, pleadings that are missing here. Finally, Plaintiff claims that since they are a Florida-based company, this is sufficient to give rise to an interstate effect for RICO purposes. The Court can find no support for this proposition. Plaintiff has pled only facts relating to and impacting Illinois and the Complaint is wholly missing any allegations related to an interstate effect. The Court declines to read into the Complaint to

make up for deficient pleading.[2] While Plaintiff has a low bar of pleading *de minimis* effects, failing to plead any interstate effect and only pleading an impact in Illinois is insufficient.

### III. NLRB Jurisdiction

Accesso claims that CivCon's allegations of a hot cargo agreement are preempted by the NLRA under the doctrine of *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). While Defendant agrees this is not a jurisdictional issue under 12(b)(1) in its Reply, its initial Motion to Dismiss indicated it believed NLRB jurisdiction to preempt this Court's jurisdiction. This argument is unpersuasive and the Court wishes to clarify why NLRB jurisdiction is not preemptive should Plaintiff amend its Complaint consistent with this opinion. As Defendant acknowledges, if Congress did not expressly carve out the predicate act, i.e. conduct that is arguably protected or prohibited by the NLRA, federal courts are precluded from hearing the case unless the labor questions are peripheral. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 85 (1982).

However, the intersection between RICO and the NLRA is not a Rule 12(b)(1) subject matter jurisdiction analysis and is analyzed under a 12(b)(6) motion to dismiss. As the Seventh Circuit in *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) explained, "Federal statutes do not "preempt" other federal statutes, and, though one may repeal another implicitly if they are irreconcilable, RICO was enacted after the National Labor Relations Act. Federal laws *do* preempt state laws, but preemption is a defense and thus does not affect subject-matter jurisdiction." The *Baker* Court found the district court's grant of a motion to dismiss for lack of subject matter jurisdiction improper because the RICO claim was not preempted under the *Garmon* doctrine,

---

[2] Plaintiff also alleges a number of facts in its response (Dkt. 28) that are not included in the Complaint, such as that CivCon's rent payments are made to a Delaware corporation. Since they were not properly pled, the Court will not consider them at this juncture.

although it found there was a failure to state a RICO claim and affirmed the dismissal under Rule 12(b)(6). *Id.* at 691.

The RICO claim here is not preempted by the NLRA. In describing another decision, *Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654, 662 (7th Cir.1992), where the Court did find a RICO claim preempted by the NLRA, the *Baker* Court stated that "it was vital in *Talbot* that 'the underlying conduct of the plaintiffs' RICO claim [was] wrongful only by virtue of the labor laws.'" *Baker*, 357 F.3d at 688–89). However, the Court here is not being asked to resolve whether the alleged hot cargo agreement violates the NLRA. The predicate claim under RICO here is the Hobbs Act, not the NLRA. Solely because the resolution of the RICO claim may touch on labor issues does not mean this Court is precluded from hearing the case. *See Baker*, 357 F.3d at 690 ("Many federal statutes require courts to resolve issues that touch on labor relations. Consider ERISA: pension and welfare benefits often turn on the interpretation or validity of collective bargaining agreements, questions that courts resolve without the Labor Board's assistance. Just so with a claim under RICO.") (internal citations omitted). It is also not clear the NLRB would be able to hear a claim brought by the Plaintiff, who is a third-party and not subject to the CBA between Accesso and the Unions. While the Court grants the motion to dismiss for failure to plead a sufficient claim, it declines to do so on this ground.

## **CONCLUSION**

Because CivCon has failed to sufficiently plead a pattern of racketeering activity and an interstate effect sufficient to state a RICO claim, Accesso's Motion to Dismiss [Dkt. 23] is granted without prejudice. CivCon is granted leave to amend its Complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

                                                                                              _____
                                                                                              Virginia M. Kendall
                                                                                             United States District Judge

Date: October 15, 2020