# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CIVCON SERVICES, INC., individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>)  Case No. 20-cv-01821 |
| v. | )<br>) |
| ACCESSO SERVICES, LLC | )  **JURY TRIAL DEMANDED** |
| Defendant | )<br>)<br>)<br>) |

## AMENDED CLASS ACTION COMPLAINT

CivCon Services, LLC ("CivCon" or "Plaintiff"), a former tenant of a building managed by Defendant Accesso Services, LLC ("Accesso" or "Defendant"), brings this class action against Accesso for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of a class of tenants of Accesso's office buildings in Chicago's Loop.

## SUMMARY OF CASE

1. This is a RICO class action brought by the tenants in the Chicago Loop office buildings managed by Accesso for conspiring with the labor unions representing its employees to force its tenants to hire union only contractors (particularly movers and the building trades such as electricians, painters and carpet installers).

2. The result is that Accesso's tenants must pay for higher priced unionized labor. These tenants have suffered damages from this ongoing conspiracy.

3. The conspiracy is an illegal "hot cargo" agreement carried out by Accesso at both of its Chicago loop locations in response to union demands. And by requiring tenants of the

1

buildings it manages to use unionized labor, Accesso is compounding the hot cargo agreement with violations of the Hobbs Act, a type of racketeering activity.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff CivCon Services, Inc. is an Illinois corporation.

5. Defendant Accesso Services, LLC is a Florida Limited Liability Company.

6. The Court has federal question jurisdiction pursuant to 18 U.S.C. §1964(c), the civil RICO cause of action, and 28 U.S.C. §1332, as a federal question.

7. Venue is proper here as Accesso conducts business in this district and the relevant transactions occurred here.

## FACTS

8. Accesso manages at least two large commercial office buildings in the Chicago Loop, 200 W. Monroe St., and 230 W. Monroe St. Its management responsibility includes, among many others, setting rules for building access by contractors.

9. Since at least 2014, Accesso has allowed three labor unions to restrict access to its buildings by any non-union contractors: the International Union of Operating Engineers Local 399, AFL-CIO, Service Employees International Union, Local 1, and Teamsters Local 705 ("the three unions" collectively).

10. The first two of these unions have collective bargaining agreements ("CBAs") with Accesso governing the terms of employment of its engineers and janitors. But those CBA's do not, and cannot legally, prohibit Accesso from denying its tenants the right to have non-union laborers access or perform work in their office spaces. (Local 705 represents movers, which every tenant needs to move in and out of their suites, an expensive undertaking. It does not have a CBA with Accesso but successfully pressures Accesso to forbid non-union movers from accessing its buildings).

11. The conspiracy between the three unions and Accesso is unwritten. It violates the National Labor Relations Act (NLRA), 29 U.S.C. §158(e) as a type of "unfair labor practice" commonly referred to as a "hot cargo agreement," a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized.

12. Accesso has agreed to impose this restriction ("the union-only rule") on its Loop tenants at the behest of the three unions. The purpose of the hot cargo agreement is to punish non-union contractors and reward union contractors.

13. These three unions have exerted their power over Accesso for years. Their business agents, who operate outside the buildings, and union employees inside, closely monitor all contracting in Accesso buildings. If they see a truck near the loading docks without the familiar union decals, they spring into action to notify the property manager and demand the non-union contractor/firm be removed. If this is not done, the agents and/or employees notify their union officials at its local office. They will then call the property manager, demand expulsion and, if necessary, threaten a work stoppage (strike), picketing outside the building which may include the display of a large inflatable rat (sometimes called a "union rat") on or immediately adjacent to Accesso managed property for public shaming.

14. All of these actions are in violation of the CBA's, which forbid strikes, and as stated, the NLRA. Rather than oppose the union's demands, which can be accomplished by obtaining an injunction through the National Labor Relations Board, Accesso agrees to their demands, at the considerable expense of its tenants.

15. Accesso zealously enforces this union-only policy through its building managers. They direct tenants to keep non-union contractors out. Before Accesso management permits a contractor

3

into its buildings, it requires proof of union membership. If the contractor is unable to provide such proof, the contractor is prevented from entering the building.

CivCon's Experience with Accesso

16. CivCon, a civil engineering consulting and management firm, was a tenant at 230 W. Monroe St., Chicago, managed by Accesso, for several years when it decided to move, for space considerations, in April 2016.

17. CivCon reached an agreement with Accesso to permit it to move to a smaller suite in the same building for reduced rent. Accesso required CivCon to use a union mover and provided it with a tenant allowance of $24,114.00. That sum was intended to cover the higher costs for union prices of the services it needed to relocate. Accesso recommended Boyer Rosene Movers, a union mover in downtown Chicago. CivCon, like all tenants, had to receive pre-approval of any movers and contractors it used, and Accesso would not approve any that were not unionized.

18. Tenant allowances are common features in Loop commercial leases. The money is an advance on the rent the tenant will pay. The larger the allowance, the higher the rent. Thus, the $24,114.00 allowance was in reality a loan to CivCon. Accesso amortized that sum, plus interest, over the course of the lease. These rent payments, which were mailed each month, would have been lower without it.

19. CivCon hired Boyer-Rosene Moving & Storage, Inc. (Boyer-Rosene) for the move, which cost $11,168.96. It was paid from the allowance in May 2016. CivCon preferred to use a less-expensive non-union mover.

20. As part of its relocation, in April 2016, CivCon hired Chicago Electrical Company, a union firm, to install wiring in its new suite. The cost was $10,689.00, which also came from the

tenant allowance. CivCon preferred a less expensive non-union firm to do the work, but was prevented from so choosing by Accesso.

21. In April 2016, CivCon hired IMG Technologies, Inc. ("IMG"), a union firm operating throughout numerous states, to perform fiber optic/riser work to accommodate AT&T's services in its relocated office suite. Without this necessary project, CivCon would not have phone/internet services in its new suite. The cost for this was $3,896. ($2,256.04 of this amount was paid through the tenant allowance and the remaining $1,639.96 was paid by CivCon as a business expense in May 2016, not through the tenant allowance). CivCon was required to use a union firm, but it preferred to use a less expensive non-union firm for this work.

**Accesso's Other Tenants Have Also Been Victims of the Illegal Union-Only Rule**

22. Civ Con's experience was not unique. The same union-only rule was imposed and enforced by Accesso on hundreds of other tenants, including by way of example only, those set forth in the following paragraphs.

Point B, Inc. ("Point B")

23. Point B is a consulting company that helps organizations in the areas of customer engagement, growth investments, workforce experience and operations excellence. Point B has offices throughout the U.S., including an office in the Chicago loop, and has clients across the world.

24. In or about February 2018, Point B moved its Chicago office location from 150 N. Wacker Drive to the Accesso managed building located at 230 W. Monroe Street. Prior to moving in, Point B was required by Accesso to use union movers. This requirement was verbally communicated to Point B by Accesso managers and it was made clear to Point B that non-union movers would not be permitted.

25. In order to move in, Point B, per Accesso's mandatory union-only rule, hired a union mover.

26. In or about February 2019, Point B changed office suites within the 230 W. Monroe Street building managed by Accesso. Point B moved to a different floor.

27. Once again, Point B was required by Accesso, per its mandatory union-only rule, to use a union-mover for this move, and did so.

28. The union movers charged more than a non-union mover would have charged for the same move. Thus, Point B was damaged by the same pattern of racketeering as Civ Con.

Patterson Law Firm

29. The Patterson Law Firm, LLC ("Patterson Law") is a law firm located in Chicago with over a dozen lawyers and which handles, *inter alia*, business litigation.

30. During the last two to three years, Patterson Law moved into the Accesso managed building located at 200 W. Monroe Street.

31. Patterson Law was required to use union movers. In order to move in, Patterson Law, per Accesso's mandatory union-only rule, hired a union mover.

32. Patterson Law also did a "build-out" of its office space at 200 W. Monroe Street around the same time. Again, Patterson Law was required, per Accesso's mandatory union-only rule, to use union contractors for this work. Accesso would not allow any non-union contractors or movers to access the buildings. In order to complete the "build-out," Patterson Law, per Accesso's mandatory union-only rule, hired union contractors.

33. The union movers and contractors charged more than non-union firms. Thus, Patterson Law was damaged by the same pattern of racketeering as Civ Con.

Smith & Cull, Ltd.

34. Smith & Cull, Ltd. is an accounting firm providing, *inter alia*, tax, accounting, and consulting services to clients.

35. In or about 2019 or 2020, Smith & Cull moved from 20 N. Wacker Drive to the Accesso managed building located at 230 W. Monroe Street. Prior to moving in, Accesso informed Smith & Cull that it required all tenants to use union movers to move into the building. Non-union movers were not permitted.

36. In order to move in, Smith & Cull, per Accesso's mandatory union-only rule, hired a union mover.

37. Smith & Cull also did a "build-out" when it moved into 230 W. Monroe, which included painting, electrical, and carpentry work. As was the case with movers, Smith & Cull was required by Accesso to use union contractors for all it the "build-out" work. Accesso informed Smith & Cull that all tenants are required to use union contractors.

38. In order to complete the "build-out," Smith & Cull, per Accesso's mandatory union-only rule, hired union painters, carpenters, electricians, and other union workers.

39. The union movers and contractors charged Smith & Cull Ltd. more than non-union firms. Thus, Smith & Cull Ltd. was damaged by the same pattern of racketeering activity as Civ Con.

40. Accesso maintains a strict policy and practice to not allow any mover or contractor to access the building without its approval. It will not approve any non-union firm. This policy/rule is communicated to each and every tenant prior to commencing any move/contractor work.

41. This mandatory union-only rule has been continuously in place since Accesso took over the management of the 200 and 230 W. Monroe Street buildings in the Chicago Loop in or about 2014.

42. Accesso's implementation and enforcement of its mandatory union-only rule is still currently in existence. New and current tenants are not permitted to use non-union contacting firms to

do any work in their spaces. Accesso will not allow any non-union contractors to even enter the building.

43. Thus, Accesso has been engaged in this illegal practice (pattern of racketeering) since CivCon's 2016 move, and before (at least since 2014), and the practice has been continuously in effect ever since, harming other tenants over at least a three to four-year period, if not longer.

44. Moreover, the unlawful pattern is still in effect today and will continue to harm all current and future tenants into the future until halted by judicial intervention.

45. Accesso's conduct, as described above, is thus a "closed" and an "open" scheme, pattern of racketeering activity.

The Higher Cost of Union Labor in the Loop

46. The difference in cost between union and non-union labor is significant, at least 20% higher for union workers and movers (if not more).

47. For example, a comparison of hourly wage rates from the U.S. Department of Labor, Bureau of Labor Statistics (BLS) for the Chicago metropolitan area (which includes both union and non-union workers) with the Illinois Department of Labor's prevailing wage rate for Cook County, which measures only union wages, indicates sizeable differences. With respect to the three most common categories of labor used in commercial renovation, the differences are as follows: for carpenters, $32.61 (BLS) versus $46.35 (Cook County prevailing union)—a 42.1% difference; for electricians, $38.29 versus $47.40—a 23.8% difference; and, for painters, $29.59 versus $45.55—an 53.9% difference.[1]

---

[1] *See* U.S. Dep't of Labor, Bureau of Labor Statistics, May 2016 Occupational Employment Statistics, Chicago-Naperville-Arlington Heights Metropolitan Div, available at: https://www.bls.gov/oes/2016/may/oes_16974.htm. The Illinois Prevailing Wage Act, 820 ILCS 130/3 *et seq.*, requires contractors to pay workers on "public works" projects "the general prevailing rate of hourly wages in the locality." *Id.* at § 9. The Illinois Department of Labor is required to annually ascertain and

8

48. As a result, CivCon and each putative Class member preferring to use non-union movers and other contract labor, have been overcharged by a likely conservative estimate of at least 20% (and likely more). The actual amount will have to be determined by an economist.

The Restriction Violates the Hobbs Act

49. The "Hot Cargo" conspiracy among the unions and Accesso also violates 18 U.S.C. §1951(a), which states, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by…extortion or attempts or conspires so to do … shall be fined under this title or imprisoned not more than twenty years, or both ….

50. Pursuant to §1951(b), extortion means: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

51. The extorted property is the money that CivCon was required to spend on more expensive union services. Accesso's denial of access to non-union movers, tradesman, and contractors preys on the tenants' fear of lost income that will result if they cannot get their offices spaces worked on by tradesmen. In other words, unless CivCon (and the other tenants) accede to Accesso's demands, they will not be able to start or complete their renovations and be open for business.

52. By refusing to allow tenants to conduct business unless they use union labor, Accesso effectively holds hostage the tenants' ability to run their own businesses.

---

publish these prevailing rates for each county in the state. *Id.* The 2017 rates for Cook County can be found here: https://www2.illinois.gov/idol/laws-rules/conmed/documents/2017%20rates/cook.pdf.

53. The use of economic fear here is wrongful because the agreement between Accesso and the unions to impose union-only terms on the tenants is an illegal hot cargo policy. It violates 29 U.S.C. §158(e).

54. These violations of the Hobbs Act have been occurring continuously at all of Accesso's Loop buildings for the past four years (and more). It is Accesso's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.

## Class Allegations

55. The preceding paragraphs are incorporated herein as though fully set forth below.

56. CivCon brings this action both on behalf of itself, and as a class action, pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2) and (b)(3), on behalf of a Class defined as:

> All individuals and entities who were tenants in Accesso's Chicago Loop commercial buildings who were subjected to the union-only rule and incurred moving expenses or hired contractors to make improvements in their properties in the past four years.

57. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, parent corporations and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58. The Class is so numerous that joinder of all class members is impractical. While the exact number of Class members is unknown to CivCon at this time, it believes that there are, at least, hundreds, and their identities and relevant information can be ascertained from Accesso's records.

59. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a) Whether Accesso engaged in a conspiracy with any and/or all of the three unions to require only approved union contractors/movers be permitted in its loop buildings;

   b) Whether tenants were obliged to use union contractors/movers as a result of the conspiracy;

   c) Whether Accesso committed a pattern of violations of 18 U.S.C. §1951;

   d) Whether Accesso's conduct caused injury to the members of the Class and, if so, the proper amount of damages; and

   e) Whether CivCon and the other members of the Class are entitled to injunctive relief.

60. CivCon's claims are typical of the absent Class members because they were all tenants of the Defendant and were subjected to the union only rule during the relevant time period. It seeks no relief that is adverse to the absent Class members.

61. CivCon will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and RICO litigation. Class counsel will fairly and adequately represent the interests of the class.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impractical. The prosecution of separate actions by many individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort

and expense, and would assure uniformity of decision as to persons or entities similarly situated without sacrificing procedural fairness.

63. Counsel anticipates no difficulty in the management of this case because the evidence proving the conspiracy is obtainable through discovery. Damages can be determined on a Class-wide basis by an economist from publicly available data and records of the class members, contractors and other third parties.

## COUNT I:
## CLAIM AGAINST ACCESSO FOR VIOLATING 18 U.S.C. §1962(c)

64. The preceding paragraphs are incorporated herein as though fully set forth below.

65. Defendant Accesso is a RICO person pursuant to §1961(3).

66. Accesso has committed a pattern of repeated violations of §1951 since at least 2016 (and longer), which are "acts of racketeering" pursuant to 18 U.S.C. §1961(1)(B). As noted above, its implementation and enforcement of a mandatory union-only rule constitutes both a closed and open-ended pattern of racketeering. It has been ongoing for at least three to four years, and likely longer. It also currently ongoing and will continue into the future.

67. Each instance in which Accesso forces its Loop tenants to use union contractors/movers through the economic fear described above is a violation of §1951.

68. All Accesso tenants in its loop buildings have also been victimized in the same manner by the exact same practice. Any tenant who moved into, out of, or within Accesso's buildings, since Accesso took over in or about 2014, were not permitted to use non-union contractors. Similarly, any tenant who renovated and./or built out its space was similarly not permitted to use non-union contractors to perform any such work. Any such tenant would also be a victim of Accesso's same practice.

69. The RICO enterprise is an association-in-fact enterprise, pursuant to 18 U.S.C. §1961(4), consisting of the three unions and Accesso.

70. This enterprise has a common purpose: to force union-only labor on commercial tenants in buildings managed by Accesso in the Chicago Loop. It has been ongoing for years and depends upon the communications among the members to carry out its illegal purpose.

71. To accomplish this goal, as detailed above, the union agents constantly patrol all of Accesso's buildings and report any non-union contractors to Accesso's building managers. Additionally, to carry out the objectives of the enterprise, Accesso building managers instruct their subordinates in each of its Loop buildings to report any instance of a violation to its building managers.

72. This relationship has been ongoing for many years.

73. This enterprise also affects interstate commerce, as required by 18 U.S.C. §§1962(c) and (d). Accesso is a Florida limited liability company, boasting that it has $3.3 billion in assets and that it does business across 21 cities and eight states.[2] And Local 399 and SEIU Local 1 are huge multi-state "locals" with members residing in other Midwestern states. Their activities frequently cross state lines and have an effect on interstate commerce.

74. As stated, Accesso manages at least two large commercial buildings in the Chicago loop, whose tenants engage in a wide variety of professional services with clients throughout the U.S., which affects interstate commerce. Additionally, the materials used for tenant build-outs are typically purchased and sold across state lines and the union companies that Accesso's tenants are forced to hire often operate across state lines, such as IMG Technologies, Inc.

75. Therefore, Accesso has violated 18 U.S.C. §1962(c), which states, in pertinent part:

---

[2] *See* https://accessopartners.com/properties/ (last accessed October 31, 2020).

13

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…

76. As a direct and proximate cause of Accesso's pattern of racketeering, CivCon has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), in the following ways:

    a. By paying $11,168.96 for moving, which is an overcharge of at least 20% for these services had CivCon been permitted to use non-union labor;

    b. By paying $10,689.00 for wiring services, which is an overcharge of at least 20% for these services had CivCon been permitted to use non-union labor; and

    c. By paying $3,896.00 for fiber optic/riser work, which is an overcharge of at least 20% for these services had CivCon been permitted to use non-union labor.

77. Accordingly, CivCon demands judgment be entered against Accesso, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. Civcon also asks for preliminary and permanent injunctions prohibiting Accesso from continuing to enforce the union-only policy.

78. CivCon requests a jury trial.

79. CivCon requests certification of the case as a class action.

## COUNT II:
## CLAIM AGAINST ACCESSO FOR VIOLATING 18 U.S.C. §1962(d)

80. The preceding paragraphs are incorporated herein as though fully set forth below.

81. In carrying out the RICO violations, Accesso formed an agreement with the three unions to carry out the objectives described above.

82. This agreement has been ongoing between these entities for at least the last four years, and likely, longer.

83. 18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section."

84. Therefore, this is an agreement to violate §1962(c), which violates 18 U.S.C. §1962(d).

85. As a direct and proximate cause of Accesso's conspiracy to violate §1962(c), CivCon has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), as detailed above.

86. Accordingly, CivCon demands judgment be entered against Accesso, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. CivCon also seeks preliminary and permanent injunctions against Accesso from continuing to enforce the union-only policy.

87. CivCon requests a jury trial.

88. CivCon requests certification of the case as a class action.

## COUNT III
## DECLARATORY JUDGMENT ACT

89. CivCon requests that the Court declare the union-only rule to be illegal and therefore unenforceable, pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act.

Dated   November 5, 2020            Respectfully submitted,

*/s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
(312) 233.1550
(312) 233.1560 *fax*
jzouras@stephanzouras.com

rstephan@stephanzouras.com
aceragioli@stephanzouras.com


Howard Foster
Matthew Galin
**FOSTER PC**
10 S. Riverside Plaza, Suite 875
Chicago, IL 60606
(312) 726-1600
hfoster@fosterpc.com
mgalin@fosterpc.com


Aaron Walner
**THE WALNER LAW FIRM LLC**
555 Skokie Boulevard, Suite 250
Northbrook, IL 60062
(312) 371-2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com


Caroline J. Smith
**CAROLINE J. SMITH & ASSC., P.C.**
77 W. Washington St., Suite 1001
Chicago, IL 60602
(312) 606-9500
carolinesmithlaw@att.net


**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on November 5, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

<u>/s/ James B. Zouras</u>