CIVCON SERVICES, INC., individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

ACCESSO SERVICES LLC,

      Defendant.

Case No. 20-CV-01821

## ACCESSO SERVICES, LLC'S ANSWER TO AMENDED CLASS ACTION COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Accesso Services, LLC ("Accesso" or "Defendant"), for its Answer and Affirmative Defenses to the Plaintiff's Amended Class Action Complaint ("Complaint"), states as follows:

## SUMMARY OF CASE

1.    This is a RICO class action brought by the tenants in the Chicago Loop office buildings managed by Accesso for conspiring with the labor unions representing its employees to force its tenants to hire union only contractors (particularly movers and the building trades such as electricians, painters and carpet installers).

**ANSWER: Accesso denies that it conspired with labor unions representing its employees to force tenants to hire union-only contractors. The remaining allegations of this paragraph state a legal conclusion to which no response is required, but to the extent a further response is required, Accesso denies the allegations.**

2.    The result is that Accesso's tenants must pay for higher priced unionized labor. These tenants have suffered damages from this ongoing conspiracy.

**ANSWER: Accesso denies the allegations of this paragraph.**

3.     The conspiracy is an illegal "hot cargo" agreement carried out by Accesso at all of its Chicago loop locations in response to union demands. And by requiring tenants of the buildings it manages to use unionized labor, Accesso is compounding the hot cargo agreement with violations of the Hobbs Act, a type of racketeering activity.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Accesso denies the allegations of this paragraph.**

## PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff CivCon Services, Inc. is an Illinois corporation.

**ANSWER: Accesso admits the allegations of this paragraph**.

5.     Defendant Accesso Services, LLC is a Florida Limited Liability Company.

**ANSWER: Accesso admits the allegations of this paragraph.**

6.     The Court has federal question jurisdiction pursuant to 18 U.S.C. §1964(c), the civil RICO cause of action, and 28 U.S.C. §1332, as a federal question.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

7.     Venue is proper here as Accesso conducts business in this district and the relevant transactions occurred here.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

## FACTS

8.     Accesso manages large commercial office buildings in the Chicago Loop. Its management responsibility includes setting rules for building access by contractors.

**ANSWER: Accesso admits that it manages commercial office buildings in the Chicago Loop and that each of its buildings have rules that are part of the tenants' leases, but denies the remaining allegations of this paragraph.**

9.    Since at least 2014 Accesso has allowed three labor unions to restrict access to its buildings by any non-union contractors: the International Union of Operating Engineers Local 399, AFL-CIO, Service Employees International Union, Local 1, and Teamsters Local 705 ("the three unions" collectively).

**ANSWER: Accesso denies the allegations of this paragraph.**

10.    The first two of these unions have collective bargaining agreements ("CBAs") with Accesso governing the terms of employment of its engineers and janitors. But those CBA's do not, and cannot legally, prohibit Accesso from denying its tenants the right to have non-union laborers access or perform work in their office spaces. (Local 705 represents movers, which every tenant needs to move in and out of their suites, an expensive undertaking. It does not have a CBA with Accesso but successfully pressures Accesso to forbid non-union movers from accessing its buildings).

**ANSWER: Accesso admits that it has collective bargaining relationships with the International Union of Operating Engineers Local 399, AFL-CIO, and the Service Employees International Union, Local 1. Accesso also admits that it does not have a collective bargaining agreement with Teamsters Local 705. Accesso denies the remaining allegations of this paragraph.**

11.    The conspiracy between the three unions and Accesso is unwritten. It violates the National Labor Relations Act (NLRA), 29 U.S.C. §158(e) as a type of "unfair labor practice" commonly referred to as a "hot cargo agreement," a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized.

**ANSWER: Accesso denies the allegations of this paragraph.**

12.    Accesso has agreed to impose this restriction ("the union-only rule") on its Loop tenants at the behest of the three unions. The purpose of the hot cargo agreement is to punish non-union contractors and reward union contractors.

**ANSWER: Accesso denies the allegations of this paragraph.**

13.    These three unions have exerted their power over Accesso for years. Their business agents, who operate outside the buildings, and union employees inside, closely monitor all contracting in Accesso buildings. If they see a truck near the loading docks without the

familiar union decals, they spring into action to notify the property manager and demand the non-union contractor/firm be removed. If this is not done, the agents and/or employees notify their union officials at its local office. They will then call the property manager, demand expulsion and, if necessary, threaten a work stoppage (strike), picketing outside the building which may include the display of a large inflatable rat (sometimes called a "union rat") on or immediately adjacent to Accesso managed property for public shaming.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations in this paragraph and, therefore, denies the same.**

14.    All of these actions are in violation of the CBA's, which forbid strikes, and as stated, the NLRA. Rather than oppose the union's demands, which can be accomplished by obtaining an injunction through the National Labor Relations Board, Accesso agrees to their demands, at the considerable expense of its tenants.

**ANSWER: Accesso denies the allegations of this paragraph.**

15.    Accesso zealously enforces this union-only policy through its tenant handbook/rules and the directions to its building managers to keep non-union contractors out. Before Accesso management permits a contractor into its buildings, it requires proof of union membership. If the contractor is unable to provide such proof, the contractor is denied entry into the building.

**ANSWER: Accesso denies the allegations of this paragraph.**

### CivCon's Experience with Accesso

16.    CivCon, a civil engineering consulting and management firm, was a tenant at 230 W. Monroe St., Chicago, managed by Accesso, for several years when it decided to move, for space considerations, in April 2016.

**ANSWER: Accesso admits that CivCon was a tenant at 230 W. Monroe St., a building managed by Accesso. Accesso also admits that CivCon moved to a new suite in the same building in April 2016. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

17.    CivCon reached an agreement with Accesso to permit it to move to a smaller suite in the same building for reduced rent. Accesso required CivCon to use a union mover and provided it with a tenant allowance of $24,114.00. That sum was intended to cover the higher costs for union prices of the services it needed to relocate. Accesso recommended Boyer Rosene Movers, a union mover in downtown Chicago. CivCon, like all tenants, had to receive pre-

approval of any movers and contractors it used, and Accesso would not approve any that were not unionized.

**ANSWER: Accesso admits that CivCon moved to a new suite in April 2016, lowering the rent that CivCon was previously paying, that Accesso provided CivCon with an "allowance," and that Accesso recommended Boyer Rosene Movers. Accesso denies the remaining allegations of this paragraph**.

18.     Tenant allowances are common features in Loop commercial leases. The money is an advance on the rent the tenant will pay. The larger the allowance, the higher the rent. Thus, the $24,114.00 allowance was in reality a loan to CivCon. Accesso amortized that sum, plus interest, over the course of the lease. These rent payments, which were mailed each month, would have been lower without it.

**ANSWER: Accesso admits that tenant allowances are common in commercial leases in the Loop, but denies the remaining allegations of this paragraph.**

19.     CivCon hired Boyer-Rosene Moving & Storage, Inc. (Boyer-Rosene) for the move, which cost $11,168.96. It was paid from the allowance in May 2016. CivCon preferred to use a less-expensive non-union mover.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

20.     As part of its relocation, in April 2016, CivCon hired Chicago Electrical Company, a union firm, to install wiring in its new suite. The cost was $10,689.00, which also came from the tenant allowance. CivCon preferred a less expensive non-union firm to do the work, but was prevented from so choosing by Accesso.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

21.     In April 2016, CivCon hired IMG Technologies, Inc. ("IMG"), a union firm operating throughout numerous states, to perform fiber optic/riser work to accommodate AT&T's services in its relocated office suite. Without this necessary project, CivCon would not have phone/internet services in its new suite. The cost for this was $3,896. ($2,256.04 of this amount was paid through the tenant allowance and the remaining $1,639.96 was paid by CivCon as a business expense in May 2016, not through the tenant allowance). CivCon was required to use a union firm, but it preferred to use a less expensive non-union firm for this work.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

### Accesso's Other Tenants Have Also Been Victims of the Illegal Union-Only Rule

21.     CivCon's experience was not unique. The same union-only rule was imposed and enforced by Accesso on hundreds of other tenants, including by way of example only, those set forth in the following paragraphs.

**ANSWER: Accesso denies the allegations of this paragraph.**

### Point B, Inc. ("Point B")

22.     Point B is a consulting company that helps organizations in the areas of customer engagement, growth investments, workforce experience and operations excellence. Point B has offices throughout the U.S., including an office in the Chicago loop, and has clients across the world.

**ANSWER: Accesso admits that Point B has an office in the Chicago Loop. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

23.     In or about February 2018, Point B moved its Chicago office location from 150 N. Wacker Drive to the Accesso managed building located at 230 W. Monroe Street. Prior to moving in, Point B was required by Accesso to use union movers. This requirement was verbally communicated to Point B by Accesso managers and it was made clear to Point B that nonunion movers would not be permitted.

**ANSWER: Access admits that Point B became a tenant of 230 W. Monroe St., a building managed by Accesso. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

24.     In order to move in, Point B, per Accesso's mandatory union-only rule, hired a union mover.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

26.    In or about February 2019, Point B changed office suites within the 230 W. Monroe Street building managed by Accesso. Point B moved to a different floor.

**ANSWER: Accesso admits the allegations of this paragraph.**

27.    Once again, Point B was required by Accesso, per its mandatory union-only rule, to use a union-mover for this move, and did so.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

28.    The union movers charged more than a non-union mover would have charged for the same move. Thus, Point B was damaged by the same pattern of racketeering as CivCon.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny what contractors would have charged Point B and, therefore, denies that and the remaining allegations of this paragraph.**

### Patterson Law Firm

29.    The Patterson Law Firm, LLC ("Patterson Law") is a law firm located in Chicago with over a dozen lawyers and which handles, *inter alia*, business litigation.

**ANSWER: Accesso admits that Patterson Law is a law firm with a Chicago office. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

30.    During the last two to three years, Patterson Law moved into the Accesso managed building located at 200 W. Monroe Street.

**ANSWER: Accesso admits that Patterson Law moved into 200 W. Monroe Street, a building managed by Accesso. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

31.    Patterson Law was required to use union movers. In order to move in, Patterson Law, per Accesso's mandatory union-only rule, hired a union mover.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

32.     Patterson Law also did a "build-out" of its office space at 200 W. Monroe Street around the same time. Again, Patterson Law was required, per Accesso's mandatory union-only rule, to use union contractors for this work. Accesso would not allow any non-union contractors or movers to access the buildings. In order to complete the "build-out," Patterson Law, per Accesso's mandatory union-only rule, hired union contractors.

**ANSWER: Accesso admits that Patterson law did a build-out of its office space at 200 W. Monroe Street. Accesso lacks sufficient knowledge or information to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

33.     The union movers and contractors charged more than non-union firms. Thus, Patterson Law was damaged by the same pattern of racketeering as CivCon.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny what movers and contractors charged and, therefore, denies that and the remaining allegations of this paragraph.**

### Smith & Cull, Ltd.

35.     Smith & Cull, Ltd. is an accounting firm providing, *inter alia*, tax, accounting, and consulting services to clients.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

36.     In or about 2019 or 2020, Smith & Cull moved from 20 N. Wacker Drive to the Accesso managed building located at 230 W. Monroe Street. Prior to moving in, Accesso informed Smith & Cull that it required all tenants to use union movers to move into the building. Nonunion movers were not permitted.

**ANSWER: Accesso admits that Smith & Cull became a tenant of 230 W. Monroe St., a building managed by Accesso. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny remaining allegations of this paragraph and, therefore, denies the same.**

37.   In order to move in, Smith & Cull, per Accesso's mandatory union-only rule, hired a union mover.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

38.   Smith & Cull also did a "build-out" when it moved into 230 W. Monroe, which included painting, electrical, and carpentry work. As was the case with movers, Smith & Cull was required by Accesso to use union contractors for all it the "build-out" work. Accesso informed Smith & Cull that all tenants are required to use union contractors.

**ANSWER: Accesso admits that Smith & Cull law did a build-out of its office space at 230 W. Monroe Street. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny remaining allegations of this paragraph and, therefore, denies the same.**

39.   In order to complete the "build-out," Smith & Cull, per Accesso's mandatory union-only rule, hired union painters, carpenters, electricians, and other union workers.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

40.   The union movers and contractors charged Smith & Cull Ltd. more than non-union firms. Thus, Smith & Cull Ltd. was damaged by the same pattern of racketeering activity as CivCon.

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny what movers or contractors charged Smith & Cull, Ltd. and, therefore, denies that and the remaining allegations of this paragraph.**

41.   Accesso maintains a strict policy and practice to not allow any mover or contractor to access the building without its approval. It will not approve any non-union firm. This policy/rule is communicated to each and every tenant prior to commencing any move/contractor work.

**ANSWER: Accesso admits that its approval is required for all contractors, but denies the remaining allegations of this paragraph.**

42.     This mandatory union-only rule has been continuously in place since Accesso took over the management of the 200 and 230 W. Monroe Street buildings in the Chicago Loop in or about 2014.

**ANSWER: Accesso denies the allegations of this paragraph.**

43.     Accesso's implementation and enforcement of its mandatory union-only rule is still currently in existence. New and current tenants are not permitted to use non-union contacting firms to do any work in their spaces. Accesso will not allow any non-union contractors to even enter the building.

**ANSWER: Accesso denies the allegations of this paragraph.**

43.     Thus, Accesso has been engaged in this illegal practice (pattern of racketeering) since CivCon's 2016 move, and before (at least since 2014), and the practice has been continuously in effect ever since, harming other tenants over at least a three to four-year period, if not longer.

**ANSWER: Accesso denies the allegations of this paragraph.**

44.     Moreover, the unlawful pattern is still in effect today and will continue to harm all current and future tenants into the future until halted by judicial intervention.

**ANSWER: Accesso denies the allegations of this paragraph.**

45.     Accesso's conduct, as described above, is thus a "closed" and an "open" scheme, pattern of racketeering activity.

**ANSWER: Accesso denies the allegations of this paragraph.**

## The Higher Cost of Union Labor in the Loop

46.     The difference in cost between union and non-union labor is significant, at least 20% higher for union workers and movers (if not more).

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations in this paragraph and, therefore, denies the same.**

47.     For example, a comparison of hourly wage rates from the U.S. Department of Labor, Bureau of Labor Statistics (BLS) for the Chicago metropolitan area (which includes both union and non-union workers) with the Illinois Department of Labor's prevailing wage rate for Cook County, which measures only union wages, indicates sizeable differences. With respect to the three most common categories of labor used in commercial renovation, the differences are as follows: for carpenters, $32.61 (BLS) versus $46.35 (Cook County prevailing union)—a 42.1%

difference; for electricians, $38.29 versus $47.40—a 23.8% difference; and, for painters, $29.59 versus $45.55—an 53.9% difference.[1]

**ANSWER: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of this paragraph and, therefore, denies the same.**

48.     As a result, CivCon and each putative Class member preferring to use non-union movers and other contract labor, have been overcharged by a likely conservative estimate of at least 20% (and likely more). The actual amount will have to be determined by an economist.

**ANSWER: Accesso denies the allegations of this paragraph.**

## The Restriction Violates the Hobbs Act

49.     The "Hot Cargo" conspiracy among the unions and Accesso also violates 18 U.S.C. §1951(a), which states, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by...extortion or attempts or conspires so to do ... shall be fined under this title or imprisoned not more than twenty years, or both ....

**ANSWER: The quoted text of 18 U.S.C. §1951(a) contains a legal conclusion to which no response is required. Accesso denies the remaining allegations of this paragraph.**

50.     Pursuant to §1951(b), extortion means: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

51.     The extorted property is the money that CivCon was required to spend on more expensive union services. Accesso's denial of access to non-union movers, tradesman, and contractors preys on the tenants' fear of lost income that will result if they cannot get their offices spaces worked on by tradesmen. In other words, unless CivCon (and the other tenants) accede to Accesso's demands, they will not be able to start or complete their renovations and be open for business.

---

[1] **Answer: Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the allegations of Footnote 1 and, therefore, denies the same.**

**ANSWER: Accesso denies the allegations of this paragraph.**

52.     By refusing to allow tenants to conduct business unless they use union labor, Accesso effectively holds hostage the tenants' ability to run their own business.

**ANSWER: Accesso denies the allegations of this paragraph.**

53.     The use of economic fear here is wrongful because the agreement between Accesso and the unions to impose union-only terms on the tenants is an illegal hot cargo policy. It violates 29 U.S.C. §158(e).

**ANSWER: Accesso denies the allegations of this paragraph.**

54.     These violations of the Hobbs Act have been occurring continuously at all of Accesso's Loop buildings for the past four years (and more). It is Accesso's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.

**ANSWER: Accesso denies the allegations of this paragraph.**

## Class Allegations

55.     The preceding paragraphs are incorporated herein as though fully set forth below.

**ANSWER: Accesso incorporates its answers to the preceding paragraphs as though fully set forth herein.**

56.     CivCon brings this action both on behalf of itself, and as a class action, pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2) and (b)(3), on behalf of a Class defined as:

> All individuals and entities who were tenants in Accesso's Chicago Loop commercial buildings who were subjected to the union-only rule and incurred moving expenses or hired contractors to make improvements in their properties in the past four years.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

57.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, parent corporations and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

58.     The Class is so numerous that joinder of all class members is impractical. While the exact number of Class members is unknown to CivCon at this time, it believes that there are, at least, hundreds, and their identities and relevant information can be ascertained from Accesso's records.

**ANSWER: Accesso denies the allegations of this paragraph.**

59.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a)  Whether Accesso engaged in a conspiracy with any and/or all of the three unions to require only approved union contractors/movers be permitted in its loop buildings;
      b)  Whether tenants were obliged to use union contractors/movers as a result of the conspiracy;
      c)  Whether Accesso committed a pattern of violations of 18 U.S.C. §1951;
      d)  Whether Accesso's conduct caused injury to the members of the Class and, if so, the proper amount of damages; and
      e)  Whether CivCon and the other members of the Class are entitled to injunctive relief.

**ANSWER: Accesso denies the allegations of this paragraph.**

60.     CivCon's claims are typical of the absent Class members because they were all tenants of the Defendant and were subjected to the union only rule during the relevant time period. It seeks no relief that is adverse to the absent Class members.

**ANSWER: Accesso denies the allegations of this paragraph.**

61.     CivCon will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and RICO litigation. Class counsel will fairly and adequately represent the interests of the class.

**ANSWER: Accesso denies the allegations of this paragraph.**

62.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impractical. The prosecution of separate actions by many individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort

and expense, and would assure uniformity of decision as to persons or entities similarly situated without sacrificing procedural fairness.

**ANSWER: Accesso denies the allegations of this paragraph.**

63.    Counsel anticipates no difficulty in the management of this case because the evidence proving the conspiracy is obtainable through discovery. Damages can be determined on a Class-wide basis by an economist from publicly available data and records of the class members, contractors and other third parties.

**ANSWER: Accesso denies the allegations of this paragraph.**

### COUNT I:
### CLAIM AGAINST ACCESSO FOR VIOLATING 18 U.S.C. §1962(c)

64.    The preceding paragraphs are incorporated herein as though fully set forth below.

**ANSWER: Accesso incorporates its answers to the preceding paragraphs as though**

**fully set forth herein.**

65.    Defendant Accesso is a RICO person pursuant to §1961(3).

**ANSWER: Accesso denies the allegations of this paragraph.**

66.    Accesso has committed a pattern of repeated violations of §1951 since at least 2016 (and longer), which are "acts of racketeering" pursuant to 18 U.S.C. §1961(1)(B). As noted above, its implementation and enforcement of a mandatory union-only rule constitutes both a closed and open-ended pattern of racketeering. It has been ongoing for at least three to four years, and likely longer. It also currently ongoing and will continue into the future.

**ANSWER: Accesso denies the allegations of this paragraph.**

67.    Each instance in which Accesso forces its Loop tenants to use union contractors/movers through the economic fear described above is a violation of §1951.

**ANSWER: Accesso denies the allegations of this paragraph.**

68.    All Accesso tenants in its loop buildings have also been victimized in the same manner by the exact same practice. Any tenant who moved into, out of, or within Accesso's buildings, since Accesso took over in or about 2014, were not permitted to use non-union contractors. Similarly, any tenant who renovated and./or built out its space was similarly not permitted to use non-union contractors to perform any such work. Any such tenant would also be a victim of Accesso's same practice.

**ANSWER: Accesso denies the allegations of this paragraph.**

69. The RICO enterprise is an association-in-fact enterprise, pursuant to 18 U.S.C. §1961(4), consisting of the three unions and Accesso.

**ANSWER: Accesso denies the allegations of this paragraph.**

70. This enterprise has a common purpose: to force union-only labor on commercial tenants in buildings managed by Accesso in the Chicago Loop. It has been ongoing for years and depends upon the communications among the members to carry out its illegal purpose.

**ANSWER: Accesso denies the allegations of this paragraph.**

71. To accomplish this goal, as detailed above, the union agents constantly patrol all of Accesso's buildings and report any non-union contractors to Accesso's building managers. Additionally, to carry out the objectives of the enterprise, Accesso building managers instruct their subordinates in each of its Loop buildings to report any instance of a violation to its building managers.

**ANSWER: Accesso denies the allegations of this paragraph.**

72. This relationship has been ongoing for many years.

**ANSWER: Accesso denies the allegations of this paragraph.**

73. This enterprise also affects interstate commerce, as required by 18 U.S.C. §§1962(c) and (d). Accesso is a Florida limited liability company, boasting that it has $3.3 billion in assets and that it does business across 21 cities and eight states.[2] And Local 399 and SEIU Local 1 are huge multi-state "locals" with members residing in other Midwestern states. Their activities frequently cross state lines and have an effect on interstate commerce.

**ANSWER: Accesso admits that it is a Florida limited liability company that does business in more than one state. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny whether Local 399 and SEIU Local 1 have members residing in states other than Illinois or whether their activities frequently cross states lines, and therefore, denies the same. Accesso denies the remaining allegations of this paragraph.**

74. As stated, Accesso manages at least two large commercial buildings in the Chicago loop, whose tenants engage in a wide variety of professional services with clients throughout the U.S., which affects interstate commerce. Additionally, the materials used for tenant build-outs are typically purchased and sold across state lines and the union companies that Accesso's tenants are forced to hire often operate across state lines, such as IMG Technologies, Inc.

---

[2] For its answer to Footnote 2, Accesso states that its website speaks for itself and denies any and all allegations or implications inconsistent therewith.

**ANSWER: Accesso admits that it manages two commercial buildings in the Chicago Loop. Accesso lacks sufficient knowledge or information to form a belief whether to admit or deny the remaining allegations of this paragraph and, therefore, denies the same.**

75.    Therefore, Accesso has violated 18 U.S.C. §1962(c), which states, in pertinent part:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…

**ANSWER: The quoted text of 18 U.S.C. §1962(c) contains a legal conclusion to which no response is required. Accesso denies the remaining allegations of this paragraph.**

76.    As a direct and proximate cause of Accesso's pattern of racketeering, CivCon has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), in the following ways:

a.    By paying $11,168.96 for moving, which is an overcharge of at least 20% for these services had CivCon been permitted to use non-union labor;

b.    By paying $10,689.00 for wiring services, which is an overcharge of at least 20% for these services had CivCon been permitted to use non-union labor; and

c.    By paying $3,896.00 for fiber optic/riser work, which is an overcharge of at least 20% for these services had CivCon been permitted to use non-union labor and each of its subjects.

**ANSWER: Accesso denies the allegations of this paragraph and each of its subparts.**

77.    Accordingly, CivCon demands judgment be entered against Accesso, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. CivCon also asks for preliminary and permanent injunctions prohibiting Accesso from continuing to enforce the union-only policy.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

78.    CivCon requests a jury trial.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso admits only that CivCon's allegation request a jury trial, but denies the remaining allegations of this paragraph.**

79.     CivCon requests certification of the case as a class action.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso admits only that CivCon's allegation requests certification of a class, but denies the allegations of this paragraph.**

<u>COUNT II:</u>
<u>CLAIM AGAINST ACCESSO FOR VIOLATING 18 U.S.C. §1962(d)</u>

80.     The preceding paragraphs are incorporated herein as though fully set forth below.

**ANSWER: Accesso incorporates its answers to the preceding paragraphs as though fully set forth herein.**

81.     In carrying out the RICO violations, Accesso formed an agreement with the three unions to carry out the objectives described above.

**ANSWER: Accesso denies the allegations of this paragraph.**

82.     This agreement has been ongoing between these entities for at least the last four years, and likely, longer.

**ANSWER: Accesso denies the allegations of this paragraph.**

83.     18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section."

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

84.     Therefore, this is an agreement to violate §1962(c), which violates 18 U.S.C. §1962(d).

**ANSWER: Accesso denies the allegations of this paragraph.**

85. As a direct and proximate cause of Accesso's conspiracy to violate §1962(c), CivCon has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), as detailed above.

**ANSWER: Accesso denies the allegations of this paragraph.**

86. Accordingly, CivCon demands judgment be entered against Accesso, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. CivCon also seeks preliminary and permanent injunctions against Accesso from continuing to enforce the union-only policy.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

87. CivCon requests a jury trial.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso admits that CivCon's allegations request a jury trial, but denies the allegations of this paragraph.**

88. CivCon requests certification of the case as a class action.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso admits only that CivCon's allegation requests certification of a class, but denies the remaining allegations of this paragraph.**

## COUNT III
## DECLARATORY JUDGMENT ACT

89. CivCon requests that the Court declare the union-only rule to be illegal and therefore unenforceable, pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent that a response is required, Accesso denies the allegations of this paragraph.**

## DENIAL OF FACTS NOT EXPLICITLY ADMITTED

Defendant denies all allegations contained within Plaintiff's First Amended Class Action Complaint that are not explicitly admitted in this Answer.

## AFFIRMATIVE DEFENSES

In further answer to the First Amended Class Action Complaint, and by way of affirmative and other defenses, Defendant states that it will rely upon the following affirmative and other defenses, if applicable, and if supported by facts to be determined by appropriate discovery. Defendant reserves the right, subject to the Court's approval if such approval is required under the Federal Rules of Civil Procedure, to amend its Answer, upon further investigation and discovery, to include any additional defenses of which Defendant becomes aware.

1.     The Plaintiff's Complaint, and each purported claim and allegation for relief set forth therein, fails to state a claim upon which relief may be granted.

2.     The claims of Plaintiff and/or any other members of a putative class, and each purported claim and allegation for relief, are barred by the equitable doctrine of unclean hands.

3.     The claims of Plaintiff and/or any other members of a putative class, and each purported claim and allegation for relief, are barred by the equitable doctrines of waiver, laches, and estoppel.

4.     The claims of Plaintiff and/or any other members of a putative class, and each purported claim and allegation for relief, are barred by the failure to exhaust administrative remedies and failure to comply with all necessary prerequisites to the filing of this action.

5.     The claims of Plaintiff and/or any other members of a putative class, and each purported claim and allegation for relief, are barred by the failure to exercise reasonable care and diligence to mitigate any alleged damages or to avoid the consequences of their alleged injuries.

6. The alleged damages claimed by Plaintiff and/or any other member of a putative class, if any, were not caused or proximately caused by Accesso's conduct.

7. The alleged damages claimed by Plaintiff and/or any other members of a putative class were caused in whole or part by persons, entities, or organizations outside of Accesso's control.

8. The claims and request for class certification are barred because Accesso has not engaged Plaintiffs in actions of the kind alleged that are generally applicable to the proposed class and, as such, this action is not properly maintainable and/or does not qualify for certification under the requirements for a class action.

9. Plaintiff is not entitled to certification of this action as a class action because the purported class is not so numerous that joinder of its members is impracticable, questions of law or fact are not common to the class, the claims of Plaintiff are not typical of the claims or defenses of the purported class, the purported representative Plaintiff will not fairly and adequately protect the interest of the class, and the requirements of Fed.R.Civ.P. 23(b) are not met in this case.

10. Plaintiff's class claims are barred because questions of law and fact common to the Plaintiff does not predominate over the questions affecting individual members of the proposed class.

11. Plaintiff's class claims are barred because Plaintiff cannot establish that its claims are typical of those of the proposed class.

12. Plaintiff's class claims are barred because Plaintiff cannot establish that members of the proposed class are so numerous that joinder is impracticable.

13.     Plaintiff's class claims are barred because Plaintiff is not and would not be an appropriate representative of the proposed class.

14.     The claims of and/or relief sought by Plaintiff and/or any other members of a putative class are barred, in whole or in part, by their lack of standing under RICO.

15.     The claims of Plaintiff and/or any other members of a putative class who have executed a waiver or release of claims against Accesso may be barred by settlement, waiver, or release of claims.

16.     Some or all of Plaintiff's claims and/or those of the putative class members are barred to the extent they arose outside of the applicable statute of limitations.

17.     The claims of Plaintiff and/or any other members of a putative class are barred for the reason it and/or they negotiated agreements with Accesso and/or vendors and contractors and cannot now complain that they believe they were overcharged.

18.     Plaintiff and/or any other members of a putative class members are barred from seeking relief to the extent they have proximately caused or contributed to their own alleged damages.

19.     The claims of and/or relief sought by Plaintiff and/or any other members of a putative class are within the primary jurisdiction vested in the National Labor Relations Board ("NLRB").

20.     The claims of and/or relief sought by Plaintiff and/or any other members of a putative class are barred and preempted under the National Labor Relations Act.

21.     All allegations pertaining to the "build out" or construction work performed by tenants cannot be considered "hot cargo" agreements as they are expressly exempted under the

construction industry proviso to Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e).

22.     The claims of Plaintiff and/or any other members of the putative class are barred by collateral estoppel.

23.     To the extent Plaintiff and/or any other members of a putative class owe money to or have obligations to Accesso, then Accesso is entitled to set off and/or continuing payments.

24.     This action may not be maintained as a class action because any adjudication of Plaintiffs' claims and those of the alleged members of the putative class through purported generalized class-wide proof would violate Accesso's rights to Due Process and Trial by Jury under the United States Constitution.

25.     The Complaint improperly seeks to impair the obligation of contracts in contravention of rights guaranteed to Accesso by the United States Constitution.

26.     The Complaint improperly seeks to effect a deprivation of liberty and property in contravention of rights guaranteed Accesso by the Due Process Clause of the United States Constitution.

27.     Any imposition of treble damages pursuant to 18 USC §1964 under the circumstances of this case would be unconstitutional, insofar as it would violate the due process protections afforded by the United States Constitution, the excessive fines clause of the United States Constitution, the Commerce Clause of the United States Constitution, the Full Faith and Credit Clause of the United States Constitution, and similar provisions of any applicable state constitution. Any recovery of treble damages in this case would be unconstitutional to the extent that, without limitation, it (1) unconstitutionally may permit recovery of treble damages based on conduct that complied with applicable law, or conduct that was not directed, or did not

proximately cause harm, to Plaintiff and/or any other member of a putative class; (2) unconstitutionally may permit recovery of treble damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiff and/or any other member of a putative class and to the amount of compensatory damages, if any; (3) unconstitutionally may permit an award of treble damages for harm to nonparties; (4) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any treble damages award; (5) lacks constitutionally sufficient standards for appellate review of any treble damages awards; and (6) otherwise fails to satisfy United States Supreme Court precedent, including, without limitation, *Pacific Mutual Life Ins. Co. v. Haslip,* 499 U.S. 1 (1991), *TXO Production Corp. v. Alliance Resources, Inc.,* 509 U.S. 443 (1993), *BMW of North America, Inc. v. Gore,* 517 U.S. 599 (1996), *State Farm Mutual Automobile Insurance Co., v. Campbell,* 538 U.S. 408 (2003), and *Philip Morris USA v. Williams,* 549 U.S. 346 (2007).

28. Accesso reserves the right to amend this Answer and assert additional defenses upon discovery of additional facts.

Respectfully submitted,

POLSINELLI PC

/s/ *Robert E. Entin*
Robert Entin (IL # 6269708)
150 N Riverside Plaza, Suite 3000
Chicago, IL 60606
Phone: (312) 819-1922
Fax: (312) 819-1910
rentin@polsinelli.com
ATTORNEY FOR DEFENDANT ACCESSO

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 3rd day of December 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to the following attorneys of record:

James B. Zouras
Ryan F. Stephan
Anna M. Ceragioli
Stephan Zouras LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606

Howard Foster
Matthew Galin
Foster PC
150 N. Wacker Drive, Suite 2150
Chicago, IL 60606

Aaron Walner
The Walner Law Firm, LLC
555 Skokie Blvd, Suite 250
Northbrook, IL 60062

Caroline J. Smith
Caroline J. Smith & Assc., P.C.
77 W. Washington Street, Suite 1001
Chicago, IL 60602

*Attorneys for Plaintiff and the Class*

/s/ *Robert Entin*