# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CIVCON SERVICES, INC., individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 1:20-cv-01821 |
| v. | )<br>) |
| ACCESSO SERVICES, LLC, | )<br>) |
| Defendant. | ) |

**CLASS COUNSEL'S UNOPPOSED PETITION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD TO THE CLASS REPRESENTATIVE**

## INTRODUCTION

Class Counsel, Stephan Zouras, LLP, Foster PC, The Walner Law Firm LLC, and Caroline J. Smith and Assoc., P.C. (collectively "Class Counsel"), respectfully move for an award of attorneys' fees and costs of 35% of the $500,000.00 Settlement Fund or $175,000, in addition to litigation costs of $487.90. In addition, Class Counsel move for an award of a service payment of $6,000.00 to the Class Representative CivCon Services, LLC ("Class Representative" or "Named Plaintiff") in recognition of the risks it undertook and the time it expended on behalf of the class.

Class Counsel's efforts have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved. Ex. A, Declaration of James B. Zouras ("Zouras Decl.") ¶ 15; Ex. B, Declaration of Howard Foster ("Foster Decl.") ¶ 11. Class Counsel's efforts have resolved this action before incurring the expense of extensive and lengthy class action litigation, trial, and probable appeals, which has preserved judicial resources and benefitted the class. Class Counsel achieved this result in the face of great risk; not only the risk of funding a potential multi-year litigation without any assurance of recovery (Zouras Decl. ¶ 18), but the risk of trying a case of great novelty. To date, no such case has been brought under RICO challenging the union-only policy has been brought, either individually or as a class action, which has achieved resolution or settlement. (Foster Decl. ¶ 12).

**I.     BACKGROUND**

    **A.     Class Counsel Performed Substantial Work in this Case and Achieved Significant Results for the Class.**

Class Counsel was able to efficiently resolve this case on a class-wide basis within one year of initiating litigation. Class Counsel filed Plaintiff's class action complaint against Defendant Accesso Services, LLC ("Accesso" or "Defendant") on March 16, 2020, alleging Defendant engaged in or conspired to engage in a violation of the Racketeer Influenced and Corrupt

1

Organizations Act ("RICO") in reaching agreements with local unions to require union-only labor at the three Chicago Loop office buildings that Defendant manages. (Dkt. No. 1). Accesso moved to dismiss Plaintiff's Complaint on July 21, 2020 (Dkt. No. 23), and the Court granted its motion on October 15, 2020, dismissing Plaintiff's Complaint without prejudice and granting Plaintiff leave to amend. (Dkt. No. 30). Plaintiff filed its First Amended Complaint on November 5, 2020. (Dkt. No. 31). Defendant filed its Answer and Affirmative Defenses on December 3, 2020. (Dkt. No. 38).

Both Parties produced responses to Mandatory Initial Discovery. Subsequently, the Parties engaged in written discovery. On December 15, 2020, Plaintiff issued requests for production and interrogatories to Defendant, to which it responded on February 3, 2021. On December 28, 2020, Defendant issued requests for production and interrogatories to Plaintiff, to which it responded on February 4, 2021. Through discovery, the Parties have exchanged over 1,000 documents.

Beginning in December 2020, Counsel for the Parties engaged in extensive settlement negotiations for several months, ultimately reaching an agreement in principle on February 12, 2021. These extensive negotiations culminated in the Settlement Agreement fully executed on March 8, 2021. The settlement includes Named Plaintiff and approximately 150 current and former Accesso tenants. (Zouras Decl. ¶ 11; Foster Decl. ¶ 7). The Class is defined as:

> All individuals and entities that are or were tenants in Chicago Loop buildings with addresses of 200 W. Monroe, 230 W. Monroe, or 20 N. Clark, who moved into or out of or paid for tenant improvements in said buildings between March 16, 2016 and December 31, 2020 ("Settlement Class").

(Ex. C ("Settlement Agreement") § II., ¶ 29).

On March 9, 2021, Plaintiff filed its Unopposed Motion for Preliminary Approval of requesting, among other relief, that the Court grant preliminary approval of the Settlement Agreement and certify a Rule 23 class for settlement purposes. (Dkt. No. 50). On March 12, 2021,

2

the Court granted Preliminary Approval of the Settlement Agreement; certified the Settlement Class; appointed the firms of Stephan Zouras, LLP, Foster PC, The Walner Law Firm, LLC, and Caroline J. Smith & Assoc., P.C. as Class Counsel; appointed the Named Plaintiff as Class Representative; directed that notice be mailed; and set a date for a final approval hearing. (Dkt. No. 51).

      **B.    Class Counsel Agreed to a Reasonable Percentage of the Settlement Amount as Compensation for the Risks They Took in Prosecuting This Action and Notified Class Members of this Arrangement through Class Notice.**

Class Counsel entered into a retainer with the Named Plaintiff allowing Class Counsel to apply for a reasonable percentage of the recovery as a contingency fee payment, plus actual out of pocket expenses. (Zouras Decl. ¶ 18). Consistent with this agreement, the Settlement Agreement provides that Class Counsel may apply for 35% of the Settlement Fund, or $175,000. (Settlement Agreement § VI, ¶ 3). Class Members were notified of these terms, and the proposed service payment to the Class Representative, in the Notice of Proposed Settlement of Class Action Lawsuit ("Class Notice"). (Ex. D, Class Notice). The Class Notice also informed Class Members of their right to object and described the procedures for asserting such objections. (*Id.*). Class Members have until June 11, 2021 to timely request an exclusion from the Settlement – per the Court's March 12, 2021 order, Class Counsel will file a list of all individuals and entities who timely and adequately requested exclusion on or before June 21, 2021. (Dkt. No. 51).

**II.    ARGUMENT**

      **A.    An Award of Fees and Costs Is Allowed Under RICO.**

As a threshold matter, prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, may be entitled to reasonable attorneys' fees and costs under the RICO statute. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation

3

of § 1962 of this chapter may sue therefor . . . and shall recover . . . the cost of the suit, including a reasonable attorney's fee . . ."). Accordingly, Plaintiff is permitted to receive reimbursement for reasonable attorneys' fees and costs.

> **B.** **The Court Should Award Attorneys' Fees from a Percentage of the Fund.**

The Court should award attorneys' fees as a percentage of the total fund made available to the class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247-48 (7th Cir. 2014); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). The percentage of the fund method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)) (internal quotation marks omitted); *see also Boeing*, 444 U.S. at 478 (court prevents inequity "by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit").[1]

It is especially appropriate to use a common fund approach to the fee award in cases based on fee-shifting statutes when the "settlement fund is created in exchange for release of the

---

[1] Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994), the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys"). The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

4

defendant's liability both for damages and for statutory attorneys' fees . . ." *Skelton*, 860 F.2d at 256; *Florin*, 34 F.3d at 564. Here, the settlement fund has been created in exchange for the release of the Class Members' claims, both for damages and attorneys' fees. *See* 18 U.S.C. § 1964(c).

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, it promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest.").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing

5

advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making).

      **C.    Class Counsels' Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

          **1.    The benefits conferred upon the class justify the fee award.**

This settlement will provide the class with a substantial cash payment of up to $318,512.10. This is well within the range of reasonable recovery for the class and represents significant value given the attendant risks of litigation. *See Binissia v. ABM Indus., Inc.*, No. 13 CV 1230, 2017 WL 4180289, at *6 (N.D. Ill. Sept. 21, 2017) (13% or 27% of the maximum net recovery falls in the range of a reasonable settlement outcome for class members); *Sanchez v. Roka Akor Chi. LLC*, No. 14-cv-4645, 2017 WL 1425837, at *7 (N.D. Ill. Apr. 20, 2017) (citing cases describing recoveries of 25-75% of claimed wages as exceptional).

Importantly, Class Members were not required to submit claim forms or otherwise "opt in" to participate in the settlement. Thus, any Class Member who did not timely and validly exclude themselves from the settlement will receive payment. (Settlement Agreement § VI, ¶ 1; § IX). The settlement also does not present any signs of collusion. It was reached after intense negotiation, and all Class Members' awards were calculated according to the same allocation formulas. (Zouras Decl. ¶ 14; Foster Decl. ¶ 9).

          **2.    Continued Litigation Presented a Significant Risk to the Class.**

Continued litigation would pose significant risks. While Plaintiff believes it would prevail on its claims, Class Counsel faced significant legal hurdles in attaining collective and class action certification and in proving liability and damages. On liability, Plaintiff would have to overcome Defendant's defenses, including but not limited to whether Plaintiff's claims are preempted by the National Labor Relations Board and whether Plaintiff can establish certain elements of a successful

6

RICO claim, including that the racketeering acts were so related and continuous to constitute a "pattern" as required under 18 U.S.C. § 1961(5), that there was an effect on interstate commerce, and that a conspiracy under 18 U.S.C. § 1962(d) exists. Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

### 3. Analysis of the Market for Legal Services Supports Class Counsel's Request.

Courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigating when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They "must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

Here, Class Counsel's request is based on the market in the Northern District of Illinois, where class action lawyers routinely contract to receive one-third or more of any settlement in all types of common fund matters as compensation for the risk of funding a potential multi-year litigation without any assurance of recovery. (Zouras Decl. ¶ 19); *see, e.g.*, *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (awarding attorneys' fees of one-third of the settlement fund in a hybrid FLSA collective action and state law class action); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (same); *Campbell*, 2012 WL 1424417 at *2 (approving award of one-third of settlement plus costs

in FLSA collective action); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (awarding one-third of the settlement fund and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery.").

Class Counsel are nationally recognized for their expertise in litigating complex class and collective actions, including other RICO class actions on behalf of tenants with virtually identical claims to those asserted here, and are justified in seeking compensation in the form of 35% of any potential settlement for their efforts. (Zouras Decl. ¶¶ 5-7, 17-23; Foster Decl. ¶¶ 13-16). Before initiating this litigation, Class Counsel and the Named Plaintiff agreed that Class Counsel would request a reasonable percentage of any future recovery. (Zouras Decl. ¶ 17; Foster Decl. ¶ 11). Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiff contracted for Class Counsel to be compensated by the method Class Counsel now seeks.

Class Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faced. Class Counsel took this case on a contingent basis, meaning that there was a substantial risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As the Seventh Circuit has noted, Class Counsel

8

"could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J); *see also McGuire v. Sullivan*, 873 F.2d 974, 979-80 (7th Cir. 1989), *quoting McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967) ("[C]ontingency of compensation . . . is highly relevant in the appraisal of the reasonableness of any fee claim.").

> **D. Although the Court Need Not Perform a Lodestar Cross-Check, Class Counsel's Lodestar Supports the Fee Request.**

As set forth above, Class Counsel's fee request should be approved because the settlement provides a substantial recovery for participating Class Members, the settlement does not present any indicia that it was the product of collusion between the Parties, and Class Counsel's fee request is reasonably based on the market rate. No further showing or analysis is needed. Nevertheless, a lodestar cross-check supports the reasonableness of Class Counsel's fee request.

In the Seventh Circuit, courts are not required to perform lodestar cross-checks in common fund settlements. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the percentage fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls." *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *8 (N.D. Ill. Dec. 9, 2009).

Nonetheless, were the Court to evaluate Class Counsel's lodestar, it would highlight the reasonableness of the award. To date, Class Counsel has incurred more than $145,000 in attorneys' fees[2] and $487.90 in outstanding expenses. (Zouras Decl. ¶¶ 23, 26; Foster Decl. ¶ 16). Class

---

[2] Class Counsel anticipates that there shall be additional time spent on this case as well, including, but not limited to, the preparation and submission of a motion for final approval.

9

Counsel's rates are based on market rates and, therefore, are reasonable. (Zouras Decl. ¶¶ 21-24; Foster Decl. ¶ 15-16) To date, Class Counsel expended more than 280 hours on this case. (Zouras Decl. ¶¶ 23, 26; Foster Decl. ¶ 16). Further, Class Counsel will necessarily continue to spend time implementing the settlement by overseeing the distribution of the settlement fund. Should the Court perform the lodestar cross-check, these hours would establish the significant work that Class Counsel have invested and would confirm the reasonableness of the award. The Court should presume these hours were reasonably necessary to vigorously prosecute the case because Class Counsel contracted, and expected, to recover a percentage of the fund (if they recovered at all) and not their lodestar – and therefore had little incentive to expend unnecessary time and effort. *See Wal-Mart Stores*, 396 F.3d at 121 (The percentage method "provides a powerful incentive for efficient prosecution and early resolution of litigation."). Put another way, Class Counsel was not seeking to pad a bill that they never expected to come due.

Further, the lodestar method accounts not only for fees based on the number of hours worked, but also considers "a multiplier based on the risk of initiating the lawsuit." *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 221 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019). Here, the risk in initiating this lawsuit was particularly great – to date, no lawsuits bringing RICO challenges to the union-only policy for tenets in Chicago Loop buildings, whether brought individually or as a class action, have achieved resolution or settlement. (Foster Decl. ¶ 12).

The fee that Class Counsel request is approximately 1.2 times their lodestar amount, which is well within the range that courts accept when performing a crosscheck. *See Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y 2013) (granting approximately 6.3 multiplier); *see also*

10

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of approximately 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar).

### E. The Class Representative Should Be Awarded a Service Payment for Its Efforts in this Litigation.

The Class Representative requests a service payment of $6,000.00 for its significant contributions to the prosecution and resolution of the lawsuit. Courts may make separate awards to class representatives in recognition of their risks taken, time expended, and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Named plaintiffs in class action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *Espenscheid*, 688 F.3d at 876-77; *Cook*, 142 F.3d at 1016. In examining the reasonableness of a requested service payment, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

The role of the Class Representative in this litigation was crucial. The Class Representative sacrificed its time to prosecute this lawsuit on behalf of its fellow current and former tenants.

(Zouras Decl. ¶ 31). It reviewed and approved the Complaint. (*Id.*). It met, conferred, and corresponded with Class Counsel on a regular basis. (*Id.*). Further, it participated in responding to Mandatory Initial Discovery, responded to written discovery, and produced documents. (*Id.*). In short, the Class Representative provided invaluable information and assistance to Class Counsel, without which the Plaintiffs could not have brought this matter to a successful conclusion. (*Id.*).

Therefore, Class Counsel request a separate service payment of $6,000.00 to the Class Representative in addition to any pro rata share of the settlement fund to which it is entitled.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their Unopposed Petition for Approval of Attorneys' Fees and Service Payment to the Class Representative and enter the Proposed Order attached hereto as Ex. E:

(1) awarding Class Counsel attorneys' fees and costs in the amount of $175,000;

(2) awarding Class Counsel litigation costs in the amount of $487.90; and

(3) awarding a service payment in the amount of $6,000.00 to the Class Representative, in addition to the share of the settlement fund to which it is entitled.

Date: May 27, 2021

Respectfully Submitted,

*/s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Anna M. Ceragioli
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
jzouras@stephanzouras.com
rstephan@stephanzouras.com
aceragioli@stephanzouras.com

Howard Foster
Matthew Galin
**FOSTER PC**
150 N. Wacker Dr., Suite 2150
Chicago, IL 60606
(312) 726-1600
hfoster@fosterpc.com
mgalin@fosterpc.com

Aaron Walner
**THE WALNER LAW FIRM LLC**
555 Skokie Boulevard, Suite 250
Northbrook, Illinois 60062
Tel: (312) 371-2308
awalner@walnerlawfirm.com
walner@walnerlawfirm.com

Caroline J. Smith
**CAROLINE J. SMITH & ASSC., P.C.**
77 W. Washington St., Suite 1001
Chicago, IL 60602
(312) 606-9500
carolinesmithlaw@att.net

**CLASS COUNSEL**